# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

Amanda Petit Niccum,

    Plaintiff,

v.

Carolyn W. Colvin,
Acting Commissioner of Social Security
Administration,

    Defendant.

Case No. 3:14-CV-81 JVB-CAN

## OPINION AND ORDER

Plaintiff Amanda Petit Niccum seeks judicial review of the final decision of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, who denied her application for Disability Insurance Benefits and Supplemental Security Income disability benefits under the Social Security Act. For the following reasons, the Court affirms the decision of the Administrative Law Judge.

**A. Procedural Background**

Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income disability benefits in 2011, alleging disability beginning on April 29, 2011. (R. at 15.) Her claim was denied initially, (R. at 84–85) as well as upon reconsideration October 11, 2011. (R. at 86–87.) Plaintiff requested a hearing with an Administrative Law Judge ("ALJ"). (R. at 123–131.) On September 14, 2012, the ALJ determined that Plaintiff has not been disabled as defined in the Social Security Act from her alleged onset date through the date of the ALJ's decision. (R. at 13–

23.) The ALJ's opinion became final when the Appeals Council denied Plaintiff's request for review on December 11, 2013. (R. at 1–4.)

**B. Factual Background**

**(1)** *Plaintiff's Background and Testimony*

Plaintiff was born in 1975. (R. at 86.) Her highest level of education is the ninth grade. (R. at 35.) Plaintiff's alleged onset date of April 29, 2011. (R. at 39). Since April 2012, she has worked two days a week a Dollar General. (R. at 45.) Plaintiff testified that she can only work two days a week because after that she is in so much pain it takes her two days to recover. (R. at 46). Due to pain, she testified, she takes three or four 10–15 minute unscheduled breaks while at work.

She received unemployment benefits in 2011 after working the customer service desk at Wal-Mart for several months, though she needed help filling out the paperwork to obtain benefits. (R. at 39–40.) While working at Wal-Mart, Plaintiff also worked as a cashier at Taco Bell. (R. at 59.) Plaintiff was fired from Wal-Mart because she was on medical leave. (R. at 44.) In 2006, Plaintiff worked at an automotive parts manufacturing company. (R. at 42.) She lifted no more than 7 pounds at work. (R. at 43.)

Plaintiff claimed her disability began April 29, 2011, when she began her medical leave from Wal-Mart to have a bone tumor removed from her right index finger. (R. at 44.) Plaintiff also suffered from pain in her back and legs. (R. at 45.) Plaintiff testified that she suffers from fibromyalgia, neuropathy in her legs and feet, degenerative disc disease in her neck, osteoporosis, diabetes, and a learning disability. (R. at 47.) She said she cannot comprehend what she reads, but could understand a grocery list. (R. 37.) Plaintiff usually goes to a free clinic once

a month for treatment of her fibromyalgia and osteoporosis. (R. at 48.) Plaintiff testified that she is currently taking Cymbalta, naproxen, Posamax, Levemir, estrogen, and vitamin B-12 for her ailments. (R. at 48–49.)

Plaintiff told the ALJ that these medications "mask the pain" in her back and legs. (R. at 49.) She said her pain is a 10 out of 10 when she is at work, but "not too bad" when she can put her feet up or lay down. (R. at 50.) She said that her pain from neuropathy is usually an 8 out of 10, though it decreases when she lays down or takes a bath. (R. at 51.) She further testified that because of her degenerative disc disease, she is limited to turning her back either way. (R. at 52.) Plaintiff usually turns her whole body at work, but can turn her head well enough to safely operate a car. (R. at 53.) She rated her neck pain at a 7 out of 10. (*Id.*) Her neck pain increases when she's at work, but gets better when she has pillows for it. (R. at 53–54.)

Plaintiff testified that her health problems affect her ability to pick up objects. (R. at 54.) She said that at work she tries not to lift bags of dog food or cat litter, which can weigh up to 50 pounds. (*Id.*) She can barely pick up a gallon of milk. (R. at 55.) She uses a hand-held scanner at work. (*Id.*) However, Plaintiff has not had any recent medical treatment for her hands or back. (R. at 55–56.)

Plaintiff further testified that she is able to bathe and dress herself. (R. at 60.) Through August 2011 she would visit the amusement park at Indiana Beach monthly, though she would have to sit down quite a bit. (*Id.*) Plaintiff's son does the cooking, cleaning, dishes, and laundry. (R. at 61, 63.) Plaintiff mostly sits in her recliner all day. (R. at 61.) Plaintiff assists in home schooling her son. (R. at 62.)

(**2**) *Testimony of Plaintiff's Son*

Plaintiff's son, Douglas Petit, testified that his mother lies down for hours at a time with her legs raised. (R. at 69.) He said that she can barely move when she comes home from work and that her pain has been getting progressively worse in the past year. (R. at 70.) He said that Plaintiff home schools him in math and history and used to take him on field trips to the zoo. (R. at 73.)

**(3)** *Medical Evidence*

Plaintiff claimed that her severe, medically determinable impairments were diabetes, osteoporosis, neuropathy, degenerative disc disease, hip problems and a learning disability. (R. at 118.)

Plaintiff had a great deal of trouble with her studies in high school, and was placed in a learning disability program after meeting with the school psychologist. (R. at 360–66.) She met with licensed psychologist Dr. Russell G. Coulter-Kern on July 5, 2011. (R. at 512.) Coulter-Kern performed the Wechsler Adult Intelligence Scale Fourth Edition Test ("WAIS"). (R. at 514.) He found that Plaintiff had a verbal comprehension score of 72, a perceptual reasoning score of 73, a working memory score of 69, a processing speed score of 71, and a full-scale IQ score of 66. (R. at 514.) He placed Plaintiff's overall level of intellectual functioning in the extremely low range, but noted that most of her scores were in the borderline range and she appears to function in the borderline range of intelligence. (R. at 516.) Dr. Coulter-Kern added that Plaintiff's overall level of functioning is low because of her depression. (*Id.*)

Plaintiff was treated in the Wabash County Hospital emergency room for leg pain on December 29, 2009. (R. at 438.) She was admitted to emergency room for treatment of chest pains on May 28, 2010. (R. at 425.) She was treated for poorly controlled diabetes and released.

4

(R. at 427.) She returned to the emergency room on June 6, 2010, fearing she was suffering a stroke, but her CT scan was normal, and she was found to only be suffering from elevated blood sugar after being examined by Dr. Rose Wenrich. (R. at 443.) Plaintiff's last trip to the emergency room came on May 27, 2012 when she reported chest pain. (R. at 580.) She was released after Dr. Jennifer Drancik determined Plaintiff was most likely suffering from an esophageal spasm. (*Id.*)

In April 2011, Plaintiff was diagnosed with osteoporosis by nurse practitioner Shelly Boone. (R. at 469.) Two months later, she was again seen by Boone for complaints of shooting pain in her right arm, weakness in her right hand, headaches, and confusion. (R. at 468.) Dr. Wenrich and Boone determined that Plaintiff suffered from "out of control" diabetes causing neuropathy, and gave her medication to treat it, including a week's worth of insulin. (*Id.*)

Plaintiff was next examined by Dr. Stephen Kennedy at Family Physicians Association in Wabash on June 30, 2011. (R. at 510.) Dr. Kennedy opined that Plaintiff "qualifies for all the trigger points for fibromyalgia," and prescribed 60 mg of Cymbalta to be taken once per day. (*Id.*) Plaintiff followed up with Dr. Kennedy in August 2011. He noted that Plaintiff had continued problems with obesity, edema in her ankles, fibromyalgia, depression, and a mass in her breast. (R. at 548.) Dr. Kennedy noted at that appointment, that while Plaintiff appears to have fibromyalgia, she has no trigger points. (R. at 549.)

**(4)** *Vocational Expert's Testimony*

Vocational expert Joseph Thompson ("VE") testified at August 20, 2012 hearing before the ALJ. (R. at 75-80.) The VE classified Plaintiff's former jobs of laborer as medium and unskilled and customer service representative as light and semi-skilled. (R. at 76.)

5

The ALJ provided the VE with six hypotheticals to evaluate, all of which included Plaintiff's age, ninth grade education, and work experience. (R. at 76–8.) The first scenario also incorporated the limitations from Plaintiff's RFC assessment. (R. at 76–77.) The VE opined that, under these facts, Plaintiff could not perform her past work, but she could perform light unskilled work. (R. at 77.) Examples of positions in the regional economy were food prep cashier and folder. (R. at 77.)

For the second hypothetical, the ALJ added the limitation that the claimant could work at the sedentary level and lift up to 10 pounds. (R. at 78.) The VE testified that under these conditions, Plaintiff could not perform her past work, but could perform sedentary, unskilled work. (R. at 78.) Examples of positions in the regional economy were bench worker, order clerk, and assembler. (*Id.*)

**(5)** *ALJ's Decision*

On September 14, 2012, the ALJ issued a decision that Plaintiff was not disabled as of the alleged onset date of April 29, 2011. (R. at 13.) The ALJ determined that, since the alleged onset date, Plaintiff had multiple severe impairments: diabetes mellitus, peripheral neuropathy, degenerative disc disease in the cervical spine, obesity, and depression. (R. at 15.) Nonetheless, these did not meet any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (R. at 16.)

The ALJ further found that Plaintiff had not engaged in substantial gainful activity since April 29, 2011 (R. at 15), nor was she able to perform her past relevant work since then (R. at 21). The ALJ determined she could perform a reduced range of light work. (R. at 21), and several jobs exist in significant numbers in the national economy that Plaintiff could perform. (R.

at 22.)

**C. Standard of Review**

This Court has the authority to review Social Security Act claim decisions under 42 U.S.C. § 405(g). The Court will uphold an ALJ's decision if it is reached under the correct legal standard and supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This Court will not reconsider facts, re-weigh the evidence, resolve conflicts in the evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). This Court will, however, ensure that the ALJ built an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may access the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

**D. Disability Standard**

To qualify for DIB or SSI benefits, the claimant must establish that he suffers from a disability. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration ("SSA") established a five-step inquiry to evaluate whether a claimant qualifies for disability benefits. A successful claimant must show:

(1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform her past relevant work; and (5) he is unable to perform any other work within the national and local economy.

*Scheck v. Barnhart,* 357 F.3d 697, 699–700 (7th Cir. 2004).

An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter,* 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000).

**E. Analysis**

Plaintiff asserts two primary issues upon appeal: (1) based on the evidence upon which the ALJ made her decision, she should have found that Plaintiff's impairments meet or exceed Social Security Medically Listing 12.05 for Intellectual Disability; and (2) the ALJ's assessment of her credibility was patently wrong. (DE 14 at 11–24.)

This Court must decide whether the ALJ's assessments were reached under the correct legal standard and supported by substantial evidence—that is, evidence that is relevant and reasonably adequate to support the ALJ's conclusions. *See Briscoe*, 425 F.3d at 351; *Richardson*, 402 U.S. at 401.

**(1)** *The ALJ did not legally err in her assessment of Plaintiff's impairments under Listing 12.05*

Plaintiff claims the ALJ erred in her assessment of Plaintiff's impairments because

substantial evidence supported a finding that Plaintiff's impairments met or exceeded Medically Equal Listing 12.05. (DE 13 at 16–120.) The Court finds the ALJ justified her decision about impairments with substantial evidence. Therefore, the ALJ's decision is affirmed.

Intellectual disability is "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period . . . before age 22." *See* 20 C.F.R. Pt. 404 Subpt. P, App. 1 § 12.05. Section 12.05(C) holds that a claimant is considered mentally retarded when he has a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id*.; *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir.1999). "In cases where more than one IQ is customarily derived from the test administered, i.e., where verbal, performance, and full-scale IQs are provided as on the WAIS, the lowest of these is used in conjunction with 12.05." 20 C.F.R. Pt. 404, Subpt. P, App.1 § 12.00(D). As part of her evaluation, the ALJ is directed to "include a discussion of whether or not obtained IQ scores are considered valid and consistent with the individual's developmental history and degree of functional restriction." with 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(D).

Dr. Coulter-Kern reported that Plaintiff's full-scale IQ was 66 after administering the WAIS. The Commissioner does not dispute the validity of this score. However, the introduction to Listing 12.00 explains that standardized test scores are only part of the overall assessment of an individual's intelligence, and it is important to examine any reports that coincide with the test scores. 20 C.F.R Part 404, Subpart P, Appendix 1. Dr. Coulter-Kern placed Plaintiff's overall level of intellectual functioning in the extremely low range, but noted that most of her scores were in the borderline range and she appears to function in the borderline range of intelligence. (R. at 516.) The ALJ noted this report and also noted Plaintiff's extensive work history,

9

including her current part-time job as a cashier at Dollar General. The ALJ also examined Plaintiff's activities of daily living and took note of the fact that she has a driver's license, is able to use a computer without difficulty and home schools her son. The ALJ opined that this entire picture indicated that Plaintiff simply did not have the deficits in adaptive functioning required to satisfy Listing 12.05, or even cognitive functioning that constituted a severe impairment. This was substantial evidence to support the ALJ's conclusion that Plaintiff did not meet the criteria of Listing 12.05. There is, therefore, substantial evidence to support the ALJ's finding that Plaintiff's impairment did not meet or substantially equal Listing 12.05.

Plaintiff argued that her fibromyalgia met the second prong of § 12.05(C), i.e., whether she possessed "a physical or other mental impairment imposing additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05(C). However, since substantial evidence supports the ALJ's conclusion that Plaintiff's IQ score did not satisfy the first prong of § 12.05(C), the second prong of the test need not be addressed.

**(2)** *The ALJ did not legally err in her assessment of Plaintiff's credibility.*

The ALJ's credibility determination will not be reversed unless it is "patently wrong" and not supported by the record. *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir.2006) ("Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed."). The ALJ's "unique position to observe a witness" entitles her opinion to great deference. *Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir.1997). However, if the ALJ does not make explicit findings and does not explain them "in a way that affords meaningful review," the ALJ's credibility determination is not entitled to deference. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir.2002).

"Patently wrong" is a high burden. *Turner v. Astrue*, 390 Fed. Appx. 581, 587 (7th Cir. 2010). "An ALJ's credibility determination need not be flawless." *Adams*, 880 F. Supp. 2d at 905 (citing *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2008)). "It is only when the ALJ's determination lacks any explanation or support that we will declare it to be 'patently wrong' . . . and deserving of reversal." *Elder v. Astrue*, 529 F.3d 408, 413–414 (7th Cir. 2008) (citations omitted).

The ALJ must determine a claimant's credibility only after considering all of a claimant's "symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a); *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir.2007) ("subjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record.") If the claimant's impairments reasonably could produce the symptoms of which the claimant is complaining, the ALJ must evaluate the intensity and persistence of the claimant's symptoms through consideration of the claimant's "medical history, the medical signs and laboratory findings, and statements from [the claimant, the claimant's] treating or examining physician or psychologist, or other persons about how [the claimant's] symptoms affect [the claimant]." 20 C.F.R. § 404.1529(c); *Schmidt*, 395 F.3d at 746-47 ("These regulations and cases, taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from merely ignoring the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding.").

The ALJ provided a thorough, detailed analysis of Plaintiff's credibility in accordance with case law. The ALJ examined Plaintiff's objective findings, activities of daily living, the

locations, duration, frequency, and intensity of her pain, precipitating/aggravating factors, medications, treatment other than medication, and any other relevant factors. The ALJ specifically noted that there was no medical evidence to support the statements by Plaintiff, her son, ex-husband, or friend about the extent of her impairments. (R. at 19.) In addition, the ALJ observed that Plaintiff had not sought any psychological counseling for treatment of her dperession (R. at 20.) The ALJ also noted that Plaintiff's allegation of mental retardation was not credible given her employment at Dollar General, home-schooling of her son, and full range of daily activities. (*Id.*)

Finally, Plaintiff contends that the ALJ erred in considering her receipt of unemployment benefits. However, ALJs may rely on this ability-to-work certification as "one of many factors adversely impacting [the claimant's] credibility." *Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir.2005). There is, therefore, substantial evidence to support the ALJ's credibility determination, and it was not patently wrong.

**F. Conclusion**

The Court finds that the ALJ built an accurate and logical bridge from the evidence to her conclusions. Thus, the Court affirms the decision of the ALJ.

SO ORDERED on March 26, 2015.

    S/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE